**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Criminal Action No. 12-cr-0138-WJM

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1.     KENNETH ROYAL WHEELER

    Defendant.

---

## ORDER ON OUTSTANDING MOTIONS

---

On March 22, 2012, the Grand Jury returned a Indictment against Defendant Kenneth Royal Wheeler charging him with the following: (1) Count One - knowingly transmitting in interstate and foreign commerce a communication containing a threat to injure the person of another; specifically, at approximately 12:06 p.m., on or about March 12, 2012, Defendant transmitted from Italy to the United States via the internet social network "Facebook," "wrath commands" to kill law enforcement officers and children in violation of 18 U.S.C. § 875(c); and (2) Count Two - knowingly transmitting in interstate or foreign commerce a communication containing a threat to injure the person of another; specifically, at approximately 1:25 p.m., on or about March 12, 2012, Defendant transmitted from Italy to the United States via the internet social network "Facebook," instructions to kill law enforcement officers, politicians, judges, district attorneys, public defenders and their children in violation of 18 U.S.C. § 875(c).  (ECF No. 7.)

The following motions are pending before the Court: (1) Motion for Bill of Particulars (ECF No. 51); (2) Motion for Discovery of Grand Jury Information (ECF No. 52); (3) Motion for Notice and Exclusion of 404(b) Evidence (ECF No. 53); (4) Motion to Dismiss: Insufficiency of the Indictment (ECF No. 54); (5) Motion to Dismiss: Statute Unconstitutional As Applied (ECF No. 55); and (6) Motion for Leave to File Additional Motions (ECF No. 56). On April 12, 2013, the Court held oral argument on the following motions: (1) Motion to Dismiss: Statute Unconstitutional as Applied (ECF No. 55); and (2) Motion for Notice and Exclusion of 404(b) Evidence (ECF No. 53). The rest of the Motions are decided on the papers.

Each pending motion will be discussed in turn below.

## I. MOTION FOR DISCOVERY OF GRAND JURY INFORMATION

In his Motion for Discovery of Grand Jury Information, Defendant asks the Court to "order the disclosure, subject to the appropriate protective order, of any proceeding in which the grand jury which indicted him was selected, as well as the method used to draw, summon, and select the jurors and determine that they were legally qualified to serve." (ECF No. 52.) Defendant alleges that this information is necessary to allow him to determine whether to mount a challenge to his Indictment in accordance with Federal Rule of Criminal Procedure 6(b)(1), which provides:

> **Challenges**. Either the government or a defendant may
> challenge the grand jury on the ground that it was not
> lawfully drawn, summoned, or selected, and may challenge
> an individual juror on the ground that the juror is not legally
> qualified.

As the Government points out, the Court's plan for jury selection is publically available on its website. *See* www.cod.uscourts.gov/Orders.aspx (accessed April 26,

2013). This plan sets forth how the Court puts together the source list for the master grand jury wheel, how names are drawn from the master grand jury wheel, how jurors are summoned, and the qualifications for all such jurors. *Id*. The Defendant does not bring forth any evidence or make any argument that the plan was not followed in this case.

Because this information is publically available, the Court finds that it need not order any special disclosure to Defendant. Accordingly, the Defendant's Motion for Discovery of Grand Jury Information is DENIED.

## II. MOTION TO DISMISS: INSUFFICIENCY OF INDICTMENT AND MOTION FOR BILL OF PARTICULARS

Defendant's Motion to Dismiss alleging insufficiency of the Indictment and his Motion for Bill of Particulars revolve around a common argument, *i.e.*, the Indictment brought against Mr. Wheeler fails to include sufficient details to permit him to defend against the charges. The primary difference in the motions is the relief they seek for this insufficiency. The Motion to Dismiss argues that this failure should result in dismissal of the Indictment. (ECF No. 54 at 2.) The Motion for Bill of Particulars requests that the Government be required to provide more particular facts, specifically which person or persons the government intends to allege were threatened and exactly what words from the Facebook posts constitute those threats. (ECF No. 51 ¶ 5.)

An indictment may be dismissed if the facts alleged in the indictment fail to invoke the court's jurisdiction or state an offense. Fed. R. Crim. P. 12(b). In this circuit, an indictment is sufficient if it:

> (1) contains the essential elements of the offense intended to be charged, (2) sufficiently apprises the accused of what he must be prepared to defend against, and (3) enables the accused to plead an acquittal or conviction under the indictment as a bar to any subsequent prosecution for the same offense.

*United States v. Hall*, 20 F.3d 1084 (10th Cir. 1994).

As set forth above, the Indictment in this case charges Defendant with two counts of violating 18 U.S.C. § 875(c), which prohibits the transmission in interstate or foreign commerce of threats to injure another person. (ECF No. 7.) The Government must allege and prove three elements to support a conviction under Section 875(c): "(1) a transmission in interstate [or foreign] commerce; (2) a communication containing a threat; and (3) the threat must be a threat to injure the person of another." *United States v. DeAndino*, 958 F.2d 146, 148 (6th Cir. 1992). Each count of the Indictment in this case names a foreign communication which contains a threat against multiple persons. (ECF No. 7.) Thus, the Court finds that the Indictment in this case includes sufficient facts to satisfy each of the elements of Section 875(c).

The Court also finds that the Indictment apprises the Defendant of what he must be prepared to defend against. Each count specifically identifies the time each alleged threat was made (12:06 p.m. for Count 1 and 1:25 p.m. for Count 2), where the threat was transmitted from (Italy) and to (the United States), the mechanism used to make the threat (Facebook), and the target of the threat (law enforcement officers and children in Count 1 and law enforcement officer, politicians, judges, district attorneys, public defenders and their children in Count 2). (*Id.*) Although the Indictment does not contain the particular language of each threat, the Government has provided the

Defendant with the full text of the Facebook posts. The posts are not lengthy and, with this information, the Court has little doubt that the Defendant has sufficient information to permit him to defend himself.

Finally, the Court finds that the Indictment is specific enough to allow the Defendant to utilize any acquittal or conviction as a bar to subsequent prosecution. Given the Indictment's identification of the time of each post and the social network utilized to make each threat, someone looking at this case in the future would easily be able to identify whether a subsequent case involves the same conduct. *Compare United States v. Musgrove*, 845 F. Supp. 2d 932, 942 (E.D. Wisc. 2011) (indictment insufficient when it only specifies the day on which a threat was made because it could conceivably involve any communication made on that day). Therefore, the Court finds that the Indictment in this case is specific enough to satisfy the Federal Rules of Criminal Procedure and Defendant's Motion to Dismiss: Insufficiency of the Indictment is DENIED.

However, even where an Indictment is constitutionally sufficient, Federal Rule of Criminal Procedure 7(f) allows a criminal defendant to move for a bill of particulars. A bill of particulars is "a formal written statement by the prosecutor providing details of the charges against the defendant." 1 Fed. Prac. & Proc. § 130 (4th ed.).

> The purpose of a bill of particulars is to inform the defendant of the charge against him with sufficient precision to allow him to prepare his defense. A bill of particulars is not necessary if the indictment sets forth the elements of the offense charged and sufficiently apprised the defendant of the charges to enable him to prepare for trial. The defendant is not entitled to notice of all of the *evidence* the government intends to produce, but only the *theory* of the government's case.

*United States v. Ivy*, 83 F.3d 1266, 1281 (10th Cir. 1996) (emphasis in original) (citations, quotations, and brackets omitted).

For much the same reasons set forth above, the Court finds that a bill of particulars is not necessary in this case. The Indictment provides sufficient information to permit the Defendant to identify the particular Facebook posts which underlie this action. While the Indictment does not include the specific words that Government will allege constitute each threat, the Government has provided the Defendant with the actual language of each Facebook post. (*See* ECF No. 63-1.) The Facebook posts are not lengthy and the particular portions that mention the victims identified in the Indictment are even shorter. (*Id.*) Thus, the Court finds that the Indictment sufficiently notifies the Defendant of the charges against him and that a bill of particulars is not necessary. Accordingly, Defendant's Motion for a Bill of Particulars is DENIED.

### III. MOTION TO DISMISS: UNCONSTITUTIONAL AS APPLIED

In the Motion to Dismiss: Unconstitutional as Applied, Defendant argues that 18 U.S.C. § 875(c) is unconstitutional as applied to this case because Defendant's Facebook posts at the heart of this case did not constitute "true threats". (ECF No. 55 ¶ 2.)

A statute "which makes criminal a form of pure speech, must be interpreted with the commands of the First Amendment clearly in mind. What is a threat must be distinguished from what is constitutionally protected speech." *Watts v. United States*, 394 U.S. 705, 707 (1969). The First Amendment, therefore, permits conviction under Section 875(c) only if the communication at issue constitutes a "true threat." *See*

*Virginia v. Black*, 538 U.S. 343, 359-60 (2003) (explaining that the First Amendment "permits a state to ban a 'true threat'"). The Supreme Court has explained that a true threat communicates a "serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals." *Id.* at 359.

The Tenth Circuit has previously defined a true threat "'as a declaration of intention, purpose, design, goal, or determination to inflict punishment, loss, or pain on another, or to injure another or his property by the commission of some unlawful act.'" *Nielander v. Bd. of County Comm'rs*, 582 F.3d 1155, 1167 (10th Cir. 2009) (quoting *United States v. Viefhaus*, 168 F.3d 392, 395 (10th Cir. 1999)). A true threat goes "'beyond the pale of protected vehement, caustic . . . unpleasantly sharp attacks on government and public officials.'" *Id.* at 1168 (quoting *United States v. Crews*, 781 F.2d 826, 832 (10th Cir. 1986)).

However, a true threat does not require the speaker to "actually intend to carry out the threat." *Black*, 538 U.S. at 360; *Viefhaus*, 168 F.3d at 395. Nor does it require proof that he "had the apparent ability to carry out the threat. *The question is whether those who hear or read the threat reasonably consider that an actual threat has been made. It is the making of the threat and not the intention to carry out the threat that violates the law.*" *Viefhaus*, 168 F.3d at 395-96 (emphasis in original). Ultimately, the trier of fact must decide whether a "reasonable person would find that a [true] threat existed." *United States v. Magleby*, 241 F.3d 1306, 1311 (10th Cir. 2001).

Whether a communication constitutes a true threat rather than protected political speech is a question that is generally left for the jury. *Viefhaus*, 168 F.3d at 397 (citing

*United States v. Leaverton*, 835 F.2d 254, 257 (10th Cir. 1987)); *see also Crews*, 781 F.2d at 832 ("Ultimately the question of whether defendant's statement was political speech was a jury question."). Deciding that issue requires a "fact-intensive inquiry, in which the language, the context in which the statements are made, as well as the recipients' responses are all relevant." *Nielander*, 582 F.3d at 1167-68. However, the Tenth Circuit has recognized that in those instances in which a defendant's communication constitutes unquestionably protected speech, "the court may dismiss the charge as a matter of law." *Viefhaus*, 168 F.3d at 397.

Defendant here argues that, while his Facebook posts may be vehement and caustic, as a matter of law, they are not "true threats". Defendant makes a number of arguments in support of this contention. First, Defendant argues that, because his posts implicate politics and religion, they should be afforded additional First Amendment protection. (ECF No. 55 ¶¶ 5-6.) However, Defendant cites no authority for supporting this heightened standard. In fact, the Tenth Circuit has held that the fact that portions of his post may be related to religion and/or politics does not alter the fact that other portions of the posts are threats directed at particular people and particular places. *See Viefhaus*, 168 F.3d at 396 ("The fact that a specific threat accompanies pure political speech does not shield a defendant from culpability."). Thus, the Court finds that Mr. Wheeler's Facebook posts are not protected speech as a matter of law because they mention politics and religion.

Defendant also argues that police officers are charged with having a "thicker skin" than average citizens in the First Amendment context and, therefore, his Facebook posts should be held to a different standard. (ECF No. 69 at 2-3.) While

there is First Amendment case law in the "fighting words" context which applies a higher standard to comments made to law enforcement officials, Defendant has failed to cite any case law which supports this same principle in the "true threat" context. Moreover, even assuming the Court is to apply some heightened standard to threats against law enforcement officials, some of the threats made by Defendant targeted the children of law enforcement and judicial officers. Certainly it cannot be said that a different standard should apply to this portion of Defendant's comments.

Finally, Defendant compares his comments in this case to *United States v. Watts*, 394 U.S. 705 (1969) in which the Supreme Court held, as a matter of law, that the defendant's comments in that case were political speech and not a true threat. However, this case is easily distinguishable from *Watts*. While Mr. Watt's comments about the then-President elicited laughter from the crowd, Defendant's Facebook posts in this case were not viewed as humor. At the hearing, the Government represented that Grand Junction officials were contacted by two anonymous individuals who were concerned about the threatening nature of the comments made in Defendant's Facebook posts. The fact that these people found it necessary to report the posts to law enforcement shows that a reasonable person could perceive Mr. Wheeler's posts as a true threat.

In sum, the Court finds that this is not a case where the statements made by Defendant were so clearly protected by the First Amendment that the Court can hold, as a matter of law, that they did not constitute a true threat. Instead, the facts of this case are remarkably similar to *Viefhaus*, in which the Tenth Circuit reiterated its long-standing rule that "whether a defendant's statement is a true threat or mere political

speech *is a question for the jury*." 168 F.3d at 397 (emphasis added). Considering all of the relevant factors, the Court has little difficultly concluding that a reasonable juror could find that the Defendant's comments were a true threat. As such, this issue must be left for the jury to resolve.

Accordingly, Defendant's Motion to Dismiss: Statute Unconstitutional as Applied is DENIED.

### IV. MOTION FOR NOTICE AND EXCLUSION OF RULE 404(b) EVIDENCE

Defendant moves for notice of any evidence that may qualify as Rule 404(b) evidence as well as exclusion thereof under either Rules 401, 402, and 403. (ECF No. 53 at 1-2.) No particular categories of evidence are delineated in the Motion. (*Id*.) However, at the hearing, the Government set forth three categories of character evidence that it will seek to introduce at trial.[1] Each category will be discussed in turn below.

#### A. May 2011 DUI Arrest

The Government seeks to offer evidence of Defendant's arrest in May 2011 for DUI. (ECF No. 58 at 3.) The Government contends that evidence of the May 2011 DUI arrest is admissible as intrinsic evidence of the crimes charged. (ECF No. 58 at 5-6.) The Tenth Circuit has explained that "[e]vidence of other crimes should not be suppressed when those facts come in as *res gestae*—as part and parcel of the proof of

---

[1] Notably, the Government conceded that it will not seek to introduce evidence of Defendant's affiliation with the "Red Pill" group. Based on this representation, the Court denies as moot the Defendant's Motion to Exclude any evidence of his affiliation with "Red Pill". The Court expects the Government to abide by its representation and expects that no evidence regarding the "Red Pill" will be introduced at trial.

the offense [ ] charged in the indictment." *United States v. Kimball*, 73 F.3d 269, 272 (10th Cir. 1995) (alteration in original). The Tenth Circuit has approved using *res gestae* evidence "when it provides the context for the crime, is necessary to a full presentation of the case, or is appropriate in order to complete the story of the crime on trial by proving its immediate context or the *res gestae*." *Id*.

The 2011 DUI arrest is explicitly referenced in the Facebook post that is the subject of Count One of the Indictment. (ECF No. 63-1.) Additionally, two of the civilians named in the Facebook post that is the subject of Count Two worked at the bar where Defendant was drinking prior to his DUI arrest. Because of the relation the 2011 DUI arrest has to the subject matter of the posts, the Court agrees with the Government's contention that this evidence is intrinsic to the crimes charged as it is necessary to complete the story of the crime charged. Therefore, the Government is entitled to present evidence of the context of the May 2011 DUI arrest and Defendant's interaction with the arresting officers.

Accordingly, Defendant's Motion is denied to the extent it seeks to exclude evidence of his May 2011 DUI arrest.

    2.    <u>Interactions with Officer Winch</u>

The Government also seeks to offer evidence of Officer Winch's interactions with Mr. Wheeler between May 2009 and October 2010. In its original papers, the Government indicated that it sought to introduce the citations issued to Defendant and the charges brought against Defendant during this period. (ECF No. 58 at 2-3.) However, at the hearing, the Government represented that it intends to only have Officer Winch testify about the general nature of his interactions with Mr. Wheeler and

specifically Mr. Wheeler's combative nature during these interactions. The Government does not intend to introduce any evidence of the actual charges brought against or citations issued to Mr. Wheeler.

With respect to the interactions between Mr. Wheeler and Officer Winch between May 2009 and October 2010, the Government contends that these interactions are intrinsic to the crimes charged because Officer Winch is explicitly named in the Facebook posts. (ECF No. 58 at 5.) The Government also points out that, as discussed above, it must prove that Defendant's Facebook posts were a "true threat" as an element of the charged offenses. (*Id.*) Thus, the Government contends that this evidence is admissible and not subject to the Rule 404(b) analysis.

While this is a closer call than the DUI Arrest, the Court again agrees with the Government that the context of Officer Winch's interactions with the Defendant are intrinsic to the crimes charged. Because Officer Winch is named in one of the Facebook posts, his prior interactions with Defendant are certainly relevant to the perceived severity of such threats. *See Doe v. Pulaski Cty. Special Sch. Dist.*, 306 F.3d 616, 623 (8th Cir. 2002) (holding that "whether the speaker had a history of making threats against the person purportedly threatened" is a factor that the jury should consider in determining whether a statement was a "true threat"); *United States v. Kosma*, 951 F.2d 549, 554 (3d Cir. 1991) (holding that the history of the relationship between the defendant and the victim must be considered by the jury in determining whether a statement is a "true threat").

In *United States v. Censke*, 449 F. App'x 456 (6th Cir. 2011), the court affirmed the admission of threatening letters sent by the defendant to the victim years before the

threats that were the subject of the instant prosecution. The Sixth Circuit stated: "[T]he objective standard of whether a reasonable person would foresee that the statement would be interpreted as a threat is not something determined in a vacuum: Censke's earlier conflict with the victims is critical information for the jury to weigh in deciding whether the later threat constitutes a 'true threat,' or, as Censke characterized it, a joke." *Id*. at 467.

Additionally, the Court finds that the relevance of this evidence outweighs any possible prejudice to the Defendant. *See* Fed. R. Evid. 403. Thus, the Court finds that the evidence of interactions between Officer Winch and the Defendant is admissible. However, the Court will hold the Government to its representation that it does not intend to introduce evidence of the specific offenses that Defendant was charged with as a result of these interactions. While the *general nature* of Officer Winch's interactions with the Mr. Wheeler are relevant to the threatening nature of the Facebook posts, the specific crimes charged and the specific facts underlying commission of such crimes are not relevant to this analysis, and evidence of same will not be allowed at trial.

Based on the Government's representations at the hearing regarding the scope of this evidence, the Court denies Defendant's Motion to Exclude evidence of Mr. Wheeler's interactions with Officer Winch. Should the evidence actually introduced at trial not conform with these representations, the Defendant is free to make appropriate objections.

3. 2004 Incident at Mesa County College

The last category of evidence which the Government seeks to admit is evidence related to Defendant's arrest in April 2004 for threatening two people with a stun gun

-13-

and forcibly detaining them in his dormitory room.  The Government argues that this evidence is intrinsic to the crimes charged or that it should be admitted pursuant to Rule 404(b) evidence as relevant to the lack of mistake or accident and his motive to harm law enforcement.

The Court need not decide whether the 2004 incident is intrinsic or extrinsic to the crimes charged because both *res gestae* evidence and evidence admitted under Rule 404(b) are subject to Federal Rule of Evidence 403's balancing test.  *See United States v. Ford*, 613 F.3d 1263, 1268 (10th Cir. 2010) ("*[R]es gestae* is nonetheless subject to Rule 403's balancing test"); *United States v. Tan*, 254 F.3d 1204, 1207 (10th Cir. 2001) (holding that, in determining whether evidence is admissible under Rule 404(b), a district court must consider whether the probative value of the evidence is substantially outweighed by the potential for unfair prejudice).  Rule 403 provides: "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following:  unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, and needlessly presenting cumulative evidence."

With respect to the relevance of the 2004 incident, the Government alleges that the arresting agency was the Grand Junction Police Department (the same agency that investigated the Facebook posts at issue here) and the officers involved with the instant investigation were aware of that incident.   The Government also represented that other officers who were not directly involved with the 2004 incident were aware of such incident, and that this awareness colored their perception of the degree of threat of the Facebook posts.  The Government contends "[t]heir knowledge of the defendant's

behavior in this crime led them to believe the defendant was capable of the violence he advocated, and that he posed a true threat." (ECF No. 58 at 2.) The Court agrees that, because some of the officials involved with investigating this case had knowledge of the 2004 incident, this incident has some relevance here. *See Doe v. Pulaski Cty. Special Sch. Dist.*, 306 F.3d 616, 623 (8th Cir. 2002) (holding that "whether the speaker had a history of making threats against the person purportedly threatened" is a factor that the jury should consider in determining whether a statement was a "true threat").

However, there are a number of issues that minimize the relevance of the 2004 incident. First, the 2004 incident occurred approximately eight years before the crimes charged here. The lapse between these incidents diminishes the relevance of the 2004 incident. Perhaps more significantly, there is no overlap between the victims of the 2004 incident and the victims named in the threats at issue here. There is no indication that the officers who investigated the 2004 incident are the same officers who are named in the instant threats. Thus, while the Court finds that the 2004 incident is relevant to the crimes charged here, such relevance is minimal.

On the other hand, the Court finds that allowing admission of the 2004 incident would significantly, and unfairly, prejudice the Defendant. Based on the account of the event provided by the Government at the hearing, the details of the 2004 incident are bizarre. Defendant apparently falsely claimed that he was raped by multiple men and threatened to use a taser on his resident advisors if they attempted to leave his dorm room. Defendant called 911 on himself, spoke with the 911 operator until law enforcement arrived, and then did not believe that the responding law enforcement officer was legitimate. If the Court were to permit the jury to hear this evidence, there is

a very real possibility that the jury could conclude that the Defendant is mentally unstable and dangerous. There is significant risk that the jury could convict him on that basis alone which would be patently unjust and unfair.

Additionally, the Court finds that evidence of the 2004 incident could confuse the issues, mislead the jury, and cause undue delay. The Government has consistently taken the position that the threats contained in Defendant's Facebook posts are so serious that any reasonable person would understand them to be a "true threat". At the hearing, the Government stated that it was confident it could simply show the plain text of the Facebook posts to the jury and, in this political and social climate, the jury would return a guilty verdict in fifteen minutes. Given the Government's belief in the strength of its evidence, the Court disagrees with the Government's assertion that the 2004 incident is "necessary" context for the crimes charged. Instead, the Court believes allowing admission of this evidence would significantly prejudice the Defendant, confuse the jury about the key issues in dispute in this case, mislead the jury about what the threats are in this case, and unduly delay this trial.

In a case like this, there is a potentially limitless amount of contextual and background evidence that could be considered relevant to whether a statement constitutes a true threat. One of the purposes of Rule 403 is to balance the materiality of that contextual evidence against the possible prejudice, confusion, and waste of time if such evidence is admitted. In the context of this case, considering all of the arguments raised by both parties, the Court finds that Rule 403's balancing test weighs against admitting evidence of the 2004 incident. Accordingly, Defendant's Motion is granted to the extent it seeks exclusion of all evidence related to the 2004 incident.

## V. CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1. Defendant's Motion for Bill of Particulars (ECF No. 51) is DENIED;

2. Defendant's Motion for Discovery of Grand Jury Information (ECF No. 52) is DENIED;

3. Defendant's Motion for Notice and Exclusion of 404(b) Evidence (ECF No. 53) is GRANTED in part and DENIED in part as set forth above;

4. Defendant's Motion to Dismiss: Insufficiency of Indictment (ECF No. 54) is DENIED;

5. Defendant's Motion to Dismiss: Statute Unconstitutional as Applied (ECF No. 55) is DENIED;

6. Defendant's Motion for Leave to File Additional Motions (ECF No. 56) is GRANTED.

7. The Court will reset the remaining deadlines, including the trial of this matter, in a separate order.

Dated this 10th day of May, 2013.

BY THE COURT:

William J. Martinez
United States District Judge